UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| RACHEL HILLARY TRUMP, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 2:17 CV 42 CDP |
| BILL MORGAN and CYNTHIA JOHNSON, | ) ) ) ) |
| Defendants. | ) ) |

# MEMORANDUM AND ORDER

Plaintiff Rachel Hillary Trump, an inmate at the Women's Eastern Reception, Diagnostic and Correctional Center ("WERDCC"), brings this pro se civil rights action pursuant to 42 U.S.C. § 1983. Defendants Bill Morgan and Cynthia Johnson have separately filed motions for summary judgment. Defendants have shown that they are entitled to judgment as a matter of law on plaintiff's claims, both on the merits and on the basis of qualified immunity. I will grant the motions and will enter judgment in favor of defendants on all claims in the complaint.

## Factual and Procedural Background

On October 6, 2015, plaintiff was placed into the Long-Term Substance Abuse Treatment Program at WERDCC pursuant to Mo. Stat. Ann. § 217.362.

The treatment program, which incorporated both individual and group counseling sessions, was implemented and overseen at WERDCC by Gateway Foundation, Inc. Cynthia Johnson was a Mental Health Counselor at WERDCC, and Bill Morgan was the Functional Unit Manager for plaintiff's housing unit.

On April 14, 2016, plaintiff reported that she had been in an altercation with a treatment group participant in her housing wing named Stacy Reed.[1] Plaintiff alleges Reed stood in her doorway, refused to leave when asked, and "tried to start an argument with" with plaintiff.[2] Plaintiff alleges she left her room to avoid escalation and suffered a "mental breakdown" in the hallway.[3] Plaintiff was promptly sent to the WERDCC medical unit and received an evaluation; records of the visit reflect that plaintiff was "crying" and "upset," but otherwise physically and mentally healthy.[4]

Plaintiff requested protective custody shortly after the confrontation and was placed into protective custody on April 15, 2016.[5] A hearing was held on

---

[1] ECF 42-11. Plaintiff alleged in her deposition that Reed had harassed her on prior occasions, including one instance where Reed touched her leg and "tried to get [plaintiff] to come upstairs and cut [Reed's] hair." Plaintiff's Deposition, ECF 42-3 at pg. 64 ¶ 21-23. Plaintiff did not report the alleged instance of sexual harassment.
[2] *Id*.
[3] Plaintiff's Deposition, ECF 42-3 at pg. 152 ¶ 2-6.
[4] ECF 43 at pg. 6.
[5] *Id*.; ECF 42-11; ECF 42-12. Morgan asserts in his statement of uncontroverted material facts that plaintiff "indicated clearly that she did not need protective custody" from Reed. ECF 42 at ¶ 43. Although plaintiff did not file a response to Morgan's statement of facts, I do not accept Morgan's claim as undisputed, because the evidence shows that plaintiff ended her inmate statement with a capitalized message reading "I DO NEED PC," and she stated in her deposition that she was "begging" correctional officers to take her to protective custody.

April 20, 2016; at the hearing, plaintiff signed a waiver of protective custody and was returned to her housing wing.[6] Plaintiff alleges Reed's harassment continued.

On or around April 26, 2016, plaintiff requested to be transferred to a different housing wing.[7] Reed was relocated to a different wing the following day.[8] Plaintiff testified that Johnson regularly brought Reed back to plaintiff's wing to participate in supervised group therapy sessions over the course of the following weeks.[9] According to plaintiff, Johnson permitted Reed to "encounter" plaintiff and "berate and belittle" her in front of other participants during the treatment sessions.[10] Plaintiff testified that she met with Johnson in early May 2016 to request that Johnson stop allowing Reed to attend plaintiff's group therapy sessions, but that Johnson continued to facilitate the encounters.[11]

On May 16, 2016, plaintiff met with Caseworker Warren Winders to ask whether she could file an Informal Resolution Request (IRR) against Johnson for

---

[6] ECF 42-14.
[7] ECF 42-3 at pg. 60 ¶ 2-11. To clarify, treatment program therapy groups were made up of participants sorted by housing unit wing; by requesting a transfer, plaintiff sought both a physical relocation of her room and to be transferred into a different therapy group.
[8] *Id*. at ¶ 21-23; pg. 75 ¶ 21-23.
[9] *Id*. at pg. 71 ¶ 10-17; ECF 46-4 at pg. 41.
[10] Complaint, ECF 1 at pg. 3. The "encounters" referenced in plaintiff's complaint refer to a conflict resolution procedure employed in Gateway's treatment program group therapy sessions. In short, if two therapy group participants had an unresolved issue, one would be instructed to "encounter" the other, or confront the participant and express their feelings, while the other sat and listened; after the confrontation, the participants would have a counselor-mediated conversation and theoretically work through their issue pursuant to an established conflict resolution process.
[11] ECF 42-3 at pg. 78 ¶ 4-6; 20-22.

continuing to bring Reed to her group therapy sessions.[12] Plaintiff alleges Morgan interrupted the conversation, denied her the IRR form, and told her that if she was unhappy, she should just "sign out" of the treatment program.[13] Plaintiff said she would possibly contact an attorney about the issue, to which Morgan allegedly responded "you do that, Ms. Trump, and you make sure you spell my name right."[14] Plaintiff left the meeting without an IRR, but she says that she reported Morgan's comments to mental health counselors Anna Wilson and Katherine Spires around May 18, 2016.[15]

On May 20, 2016, plaintiff was accused of being in possession of a lighter.[16] Believing Reed was responsible for the accusation, plaintiff cursed Reed out in the presence of Correctional Officer Caleb Rasnic, who was conducting a search of plaintiff's room.[17] Officer Rasnic consequently issued plaintiff a conduct violation for creating a disturbance, and because it was her third conduct violation, plaintiff was referred to a mandatory Program Review Committee (PRC) hearing to assess whether she could remain in the treatment program.[18]

---

[12] *Id*. at pg. 78 ¶ 25 - pg. 79 ¶ 5.
[13] *Id*. at pg. 88 ¶ 19-23; ECF 42 ¶ 65.  Winders asserts he never denied plaintiff from filing an IRR, and that he was never instructed or told by Morgan to deny plaintiff an IRR.  Aff. of Winders, ECF 42-2.
[14] ECF 42-3 at pg. 89 ¶ 4-13.
[15] *Id*. at pg. 90 ¶ 1-9.
[16] *Id*.
[17] *Id*.
[18] ECF 42-7; ECF 46-4; ECF 42-18.

Plaintiff plead guilty to the creating a disturbance violation at the PRC hearing on June 7, 2016.[19] The PRC, which included defendants Morgan and Johnson, unanimously recommended plaintiff's termination from the treatment program.[20] Deputy Warden Todd Francis supported the PRC's recommendation and ordered plaintiff's removal from the program.[21] Plaintiff appealed the decision to the Division of Offender Rehabilitative Services the same day, alleging that Morgan influenced the PRC to recommend her removal in retaliation for her earlier threat to contact an attorney.[22] Plaintiff's appeal was denied on June 13, 2016.[23]

On June 20, 2016, plaintiff filed an IRR in which she alleged that Johnson and other Gateway staff allowed Reed to "make comments of a sexual nature" and "relentlessly harass" her.[24] Plaintiff further alleged that Morgan had denied her an IRR when she sought to externally report Johnson on May 16, 2016, and requested Morgan be investigated for retaliation.[25] On July 21, 2016, the MDOC responded to and denied plaintiff's IRR, stating her "concerns were addressed about the supposed sexual comments" because plaintiff had been "placed in a different

---

[19] *Id*.
[20] ECF 42-5.
[21] *Id*.
[22] *Id*. at pg. 30-37.
[23] ECF 42-8.
[24] ECF 1 at pg. 2.
[25] *Id*.

wing," and that there was "no evidence" to support plaintiff's claims of a conspiracy to remove her from the treatment program.[26]

On July 31, 2016, plaintiff filed an Offender Grievance in which she reiterated her allegations against Morgan and disputed that her complaints about Reed had been adequately addressed.[27] On August 17, 2016, Deputy Warden Tom Dunn responded to plaintiff's grievance and noted that an investigation revealed there was "no merit" to her allegations.[28] Plaintiff appealed the grievance response on September 2, 2016, and the appeal was denied on September 21, 2016.[29]

Plaintiff filed her complaint against defendants in the U.S. District Court for the Western District of Missouri, and the case was transferred to this Court. After conducting the frivolity review required by 28 U.S.C. § 1915, the Court issued process on four claims: 1) plaintiff's Eighth Amendment claims against defendants Morgan and Johnson in their individual capacities for failing to protect plaintiff from Reed, the alleged "sexual predator;" 2) plaintiff's Eighth Amendment claims against both defendants for failing to provide proper mental health treatment to plaintiff relating to her "mental breakdown" that occurred as a result of the alleged failure to protect; 3) plaintiff's Eighth Amendment claim

---

[26] ECF 42-15. The response was evidently incorrect; Reed was relocated to a different wing, not plaintiff.
[27] ECF 46-4 at pg. 69.
[28] *Id.* at pg. 68.
[29] *Id.* at pg. 65.

against Johnson for using the "sexual predator" to belittle and harass plaintiff; and 4) plaintiff's First Amendment claim against Morgan for retaliating against plaintiff by recommending her termination from the treatment program.[30]

Defendants now move for summary judgment on several grounds. Both defendants argue that the undisputed evidence shows that none of the conduct alleged by plaintiff rises to the level of a constitutional violation. Defendants further argue that they are entitled to qualified immunity on plaintiff's claims. Finally, Johnson contends plaintiff failed to exhaust her administrative remedies before filing suit.

## Summary Judgment Standard

When considering a motion for summary judgment, I must view the facts and inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). The defendants, as the moving parties, must establish that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving parties have met their burden, the nonmoving party may not rest on the allegations in her pleadings, but by affidavit or other evidence, must set forth specific facts showing that a

---

[30] ECF 7 at pg. 4.

genuine issue of material fact exists on each essential element of her claim.[31] Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 323. The mere existence of some alleged factual dispute will not serve to defeat summary judgment; rather, the factual dispute must be "genuine." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

In § 1983 actions, qualified immunity shields government officials from suit unless their conduct violated a clearly established right of which a reasonable official would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). For a plaintiff to overcome qualified immunity, existing precedent must have placed the constitutional question "'beyond debate.'" *City & Cnty. of S.F., Calif. v. Sheehan,* 135 S. Ct. 1765, 1774 (2015) (quoting *Ashcroft v. al-Kidd,* 563 U.S. 731, 741 (2011)). "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft*, 563 U.S. at 743 (alteration added) (internal quotation marks and citation omitted).

The evidence before the Court, including plaintiff's verified complaint and deposition testimony, shows that defendants' alleged conduct did not amount to

---

[31] A verified complaint is equivalent to an affidavit for summary judgment purposes. *Hanks v. Prachar*, 457 F.3d 774, 775 (8th Cir. 2006) (per curiam).

constitutional violations, and no genuine issue of material fact exists for trial. Accordingly, both under the standards for qualified immunity and on the merits, defendants are entitled to judgment as a matter of law.

## Discussion

A. <u>Failure to Protect</u>

Turning first to the claims brought against both defendants, plaintiff alleges that Morgan and Johnson failed to protect her from Reed, whom plaintiff labels a "predator" in her complaint. Specifically, plaintiff takes issue with defendants' failure to prevent Reed from "berating and belittling" plaintiff in her treatment group therapy sessions after Reed had been relocated to a different housing wing.[32]

To prevail in a § 1983 failure to protect claim, the plaintiff must show that the defendants were deliberately indifferent to her constitutional rights, either because they actually intended to deprive her of some right, or because they acted with reckless disregard of her right to be free from attacks by fellow inmates. *Andrews v. Siegel*, 929 F.2d 1326, 1330 (8th Cir. 1991) (quotations omitted). To establish "reckless disregard" by prison officials, the plaintiff must show that she was faced with a "pervasive risk of harm" and that the prison officials failed to respond reasonably to that risk. *Id.* (citations omitted); *see also Conley v. Dep't of Corr.*, No. 4:08CV1513DJS, 2009 WL 211963, at *3 (E.D. Mo. Jan. 23, 2009).

---

[32] ECF 1 at pg. 3.

Further, to state a valid Eighth Amendment claim, the plaintiff must allege that she suffered an actual, compensable injury. *Cummings v. Malone*, 995 F.2d 817, 822-23 (8th Cir. 1993).

Summary judgment will be entered for defendants because the undisputed evidence shows that plaintiff did not suffer any compensable injury and that she never faced any risk of objectively serious harm. In her complaint, plaintiff alleges Reed was a "predator" and requests the Court find she was "violated . . . under the PREA."[33] But in her deposition she testified that she never reported Reed for a PREA violation, even though she had previously reported two other inmates for such a violation. She testified that she "absolutely" would have reported if she were the victim of sexual harassment or abuse.[34] Plaintiff's vague allegations of verbal harassment do not amount to a constitutional violation: "Verbal threats and name calling usually are not actionable under § 1983." *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993); *see also Martin v. Sargent*, 780 F.2d 1334, 1339 (8th Cir. 1985) ("Verbal threats do not constitute a constitutional violation."). Moreover, plaintiff does not claim that Reed ever physically attacked her or threatened her with violence; there is no evidence that defendants were aware of any "pervasive risk of harm" plaintiff may have faced. Accordingly, because there

---

[33] The Prison Rape Elimination Act, 34 U.S.C. §30302, *et seq*.
[34] *See* ECF 42-3 at pg. 149 ¶ 11-17; pg. 175 ¶ 14-25.

is no evidence that plaintiff suffered any Constitutionally cognizable injury, nor is there any evidence that defendants knew she faced any pervasive risk of harm, defendants cannot be held liable as a matter of law, and they are both entitled to summary judgment on plaintiff's claim.

B. <u>Deliberate Indifference to Medical Needs</u>

Plaintiff also claims that she was "denied assistance and proper mental health access" by defendants. Plaintiff alleges she suffered a "mental breakdown" because of Reed's "constant harassment," and that her mental health continued to suffer because Reed was permitted to confront her in her group therapy sessions.

To establish a constitutional violation based on inadequate medical care, the plaintiff must show that the defendants were deliberately indifferent to an objectively serious medical need. *Vaughn v. Gray,* 557 F.3d 904, 908 (8th Cir. 2009); *see also Estelle v. Gamble*, 429 U.S. 97, 104 (1976). An objectively serious medical need is one "that has been diagnosed by a physician as requiring treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Coleman v. Rahija,* 114 F.3d. 778, 784 (8th Cir. 1997) (citation omitted). To satisfy the subjective "deliberate indifference" component, plaintiff must show that the defendants had knowledge of, yet deliberately disregarded, an excessive risk to her health. *Keeper v. King,* 130 F.3d 1309, 1314 (8th Cir. 1997).

Defendants are entitled to summary judgment on plaintiff's Eighth Amendment deliberate indifference claim because there is no evidence that she ever faced an objectively serious medical need. Although she alleges that she had a "mental breakdown," she received medical assistance immediately after the event and she met with medical staff twice over the following two weeks. At no point did any medical professional observe symptoms of a psychotic break or suicidal ideation, nor any degree of lasting physical or psychological damage.[35] Merely crying and being upset after an uncomfortable confrontation is not evidence of a medical need that requires treatment under the Constitution, nor evidence of a medical need that is so obvious that a lay person would easily recognize the necessity for a doctor's attention. Moreover, even if both defendants had observed plaintiff's purported mental breakdown—which plaintiff does not allege—they could not have overridden the medical assessment made by the professionals who treated plaintiff and did not find evidence of a mental breakdown: "[P]rison staff . . . [cannot] substitute their judgment for a medical or mental health judgment." *McWhirt v. Cowin*, 2009 WL 249792, at *4 (W.D. Mo. Feb. 3, 2009) (citing *Meloy v. Bachmeier,* 302 F.3d 845, 849 (8th Cir. 2002)).

C. <u>Cruel and Unusual Punishment</u>

Plaintiff brings one claim for cruel and unusual punishment against Johnson

---

[35] ECF 42 at ¶ 18-39.

only. As a threshold matter, Johnson asserts plaintiff failed to exhaust her administrative remedies before filing suit. Johnson contends that plaintiff did not timely file the IRR which led to this claim, and additionally, that she abandoned the claim by failing to raise any complaints about Johnson in her Offender Grievance form. Johnson is incorrect on both grounds. First, plaintiff's IRR contains allegations of MDOC and Gateway staff failing to prevent sexual harassment by an offender, so it is not subject to a time limit according to the MDOC Department Procedure Manual.[36] Second, while plaintiff did not mention Johnson or Gateway by name in her Offender Grievance, the Manual does not require her to do so; plaintiff responded to and specifically disputed the MDOC's response to her allegations against Johnson: "I was NEVER moved to another wing. That is false."[37] This is sufficient evidence that plaintiff was "not satisfied" with the response to her IRR and that she did not abandon her claim against Johnson.[38]

---

[36] ECF 46-2. The Procedure Manual § III.A.6 provides: "All allegations of offender sexual abuse and harassment are to follow the process in accordance with the PREA informal resolution request (IRR) . . . section of this procedure." The PREA section of the Manual, § III.N.1, states: "The department shall not impose a time limit on when an offender may submit a complaint regarding an allegation of offender sexual abuse. The department will not require an offender to use the informal grievance process, or to otherwise attempt to resolve with staff members, an alleged incident of offender sexual abuse."
[37] ECF 46-4 at pg. 69. This statement was a direct reply to the MDOC's response to her IRR, in which the MDOC incorrectly asserted her complaints about the sexual comments were addressed because she had been "placed on a different wing and removed from the situation." ECF 1-1 at pg. 1.
[38] *See* ECF 46-2 at § III.L.1.

Johnson is nonetheless entitled to summary judgment on plaintiff's claim because Johnson's conduct does not amount to a cognizable constitutional violation. Plaintiff alleges Johnson routinely brought Reed to plaintiff's group therapy sessions and allowed Reed to "encounter" her "for other's amusement."[39] This allegation was liberally construed as an Eighth Amendment claim for cruel and unusual punishment.

The Gateway Program Handbook explains that the "encounter" conflict resolution process was designed to address and resolve the sort of "member dispute or personality clash" of which plaintiff complains.[40] Johnson ostensibly concluded, in her informed judgment as a counselor, that there was therapeutic value in facilitating closely-supervised encounters between plaintiff and Reed under the procedure outlined in the Handbook. Plaintiff's disagreement with Johnson and her general dissatisfaction with Gateway's conflict resolution process do not provide legitimate grounds for an Eighth Amendment claim: "Appellant's difference of opinion over matters of expert medical judgment or a prescribed course of medical treatment fails to state a federal constitutional question."

---

[39] ECF 1 at pg. 3.
[40] ECF 46-6 at pg. 16. Specific reasons for initiating encounters include "to express strong feelings (resentment, rage, frustration)" and "to resolve conflict . . . and negotiate an improved relationship with another member." *Id*. at pg. 17.

*Randall v. Wyrick*, 642 F.2d 304, 308 (8th Cir. 1981); *see also Burston v. Halaka*, No. 1:12CV30 SNLJ, 2015 WL 4429347, at *2 (E.D. Mo. July 20, 2015).

Additionally, Johnson is entitled to qualified immunity on plaintiff's claim because she did not violate any clearly established constitutional or statutory right belonging to plaintiff. *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Davis v. Hall*, 375 F.3d 703, 712 (8th Cir. 2004) (quotation omitted). Because there is no "clearly established" or "bright line" Eighth Amendment precedent holding that an inmate has any right not to participate in a counselor-mediated conflict resolution process with a previously antagonistic inmate, Johnson is entitled to summary judgment for this reason as well.

D. Retaliation

Plaintiff asserts a claim for First Amendment retaliation against Morgan only. Plaintiff plead guilty to her third conduct violation at a PRC hearing on June 7, 2016, and the PRC unanimously recommended an "unsuccessful program exit" for her repeated "negative behavior."[41] Deputy Warden Todd Francis subsequently accepted the PRC's recommendation and ordered her removal from the treatment program. Plaintiff testified that Morgan, who participated in her PRC hearing,

---

[41] ECF 42-5.

ultimately recommended her removal from the treatment program in retaliation for her threat to contact an attorney on May 16, 2016.[42]

Plaintiff's retaliation claim fails as a matter of law for more than one reason. First, to support a First Amendment retaliation claim under 42 U.S.C. § 1983, plaintiff must show that Morgan actually took an adverse action against her. *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004) (citation omitted). Morgan and the PRC merely recommended plaintiff's removal from the treatment program; MDOC Officer Rasnic issued plaintiff the conduct violation which led to the PRC hearing, and Deputy Warden Francis ultimately ordered her termination from the program. Morgan did not personally take any adverse action against plaintiff and he cannot be held liable for the adverse actions taken by others. *See Madewell v. Roberts,* 909 F.2d 1203, 1208 (8th Cir. 1990) ("Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights.").

Moreover, even if Morgan's negative recommendation could be considered an adverse action, the disciplinary process was procedurally and substantively proper. Federal review of prison disciplinary decisions is limited: "the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board." *Hrbek v. Nix*, 12 F.3d 777, 779 (8th Cir. 1993). In other words, the Court reviews disciplinary decisions "only to ensure that it 'was

---

[42] ECF 46-4.

not so lacking in evidentiary support as to violate due process' or otherwise constitute[s] an arbitrary decision." *Id*. (quoting *Superintendent, Massachusetts Correctional Inst. V. Hill*, 472 U.S. 445, 457 (1985)). Plaintiff plead guilty to her third conduct violation at the PRC hearing—her second violation for causing a disturbance—and has consistently admitted her culpability.[43] Morgan's negative recommendation was therefore supported by "some evidence" and cannot genuinely be considered arbitrary. Morgan is entitled to summary judgment on plaintiff's retaliation claim.

Accordingly, for all of the foregoing reasons,

**IT IS HEREBY ORDERED** that defendants' motions for summary judgment [40, 44] are **GRANTED** on all of plaintiff's claims.

**IT IS FURTHER ORDERED** that plaintiff's renewed motion to appoint counsel [47] is **DENIED** as moot.

An appropriate Judgment is entered herewith.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 31st day of March, 2020.

---

[43] ECF 42-5; ECF 42-17 at pg. 17.